**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAUL VARACALLO, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, *et al.*,<br><br>Defendants. | Case No. 2:04-cv-02702 (BRM)(CF)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are two Motions to Enforce Class Action Settlement and Final Judgment filed by Defendant Massachusetts Mutual Life Insurance Company ("Defendant"). Defendant's first Motion to Enforce (the "Sullivan Motion") is against Patricia Sullivan ("Mrs. Sullivan") and Robert G. Sullivan ("Mr. Sullivan") (together, the "Sullivans"). (ECF No. 271.) The Sullivans filed affidavits opposing the Motion. (Aff. of Robert Sullivan (ECF No. 284); Aff. of Patricia Sullivan (ECF No. 284-1)) and Defendant replied. (ECF No. 286). Defendant's second Motion to Enforce (the "Pargo Motion") is against Pargo LLLP ("Pargo"). (ECF No. 287.) Pargo filed an opposition (ECF No. 297), Defendant filed a reply (ECF No. 308), and Pargo filed a sur-reply (ECF No. 311).

Having reviewed and considered the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendant's Sullivan

Motion is **GRANTED IN PART** and **DENIED AS MOOT IN PART** and Defendant's Pargo Motion is **DENIED**.

## I. BACKGROUND

### A. The Class Action Settlement

In 2005, this Court approved a settlement agreement in a nationwide class action against Defendant (the "Settlement Agreement") concerning Defendant's improper marketing and selling of life insurance policies. (Final Order (ECF No. 158).) The certified class (the "*Varacallo* class") included, in relevant part, all persons who, as of March 31, 2004, had an ownership interest in a qualifying policy issued during the period from January 1, 1983, through December 31, 2003. (ECF No. 158 at 3; Settlement Agreement (ECF No. 20) at 14–15, 17.)

The Settlement Agreement contained a release (the "Release"), which barred class members from bringing "any and all causes of action . . . whether past, present, or future . . . that have been, could have been, may be or could be alleged or asserted" by any class member against the releasees that "in any way related to" the releasees "marketing, solicitation, illustration, application, underwriting, acceptance, sale, purchase, operation, performance, administration, [and] servicing" of the qualifying policies. (ECF No. 158 at 10; ECF No. 20 at 45–46.) The Releasees included Defendant as well as its "past, present, and future, parents, predecessors, successors, subsidiaries, affiliates and assigns, and each of their respective past, present, and future shareholders, members, officers, directors, employees, Producers, Agents, general agencies, regional and district managers, attorneys, heirs, administrators, executors, insurers, trustees, representatives, or agents acting in their capacity as such." (ECF No. 20 at 23.) The Court "expressly retain[ed] jurisdiction as to all matters relating to the administration, consummation,

enforcement and interpretation" of the Settlement Agreement and its final order and judgment. (ECF No. 158 at 22.)

**B. The Sullivan Dispute**

In June 2000, Mr. Sullivan obtained a life insurance policy issued by Defendant (the "Sullivan Policy"). (Compl. (ECF No. 271-3) ¶¶ 26–28; Decl. of Maria Morgado (ECF No. 271-4) ¶ 3.) Mrs. Sullivan owned that policy from its issuance until October 2024, when she transferred ownership to Mr. Sullivan. (ECF No. 271-3 ¶¶ 29, 38.)

On January 28, 2026, the Sullivans filed a complaint in New York Supreme Court (the "New York Action") against Defendant as well as the insurance specialist who sold them the Sullivan Policy, the insurance specialist's employer, and the broker who acquired that employer. (*Id.* ¶¶ 3–15.) The Sullivans alleged fraudulent misrepresentation, deceptive conduct violating NY General Business Law § 349, and breach of contract regarding the Sullivan Policy. (*Id.* ¶¶ 50–103, 104–24, 125–50.) Specifically, the Sullivans allege they purchased the Sullivan Policy based on the representation that the annual premium for the policy would be fixed for its duration. (*Id.* ¶¶ 30–49.) Unbeknownst to the Sullivans, the premium began to rise at "an exponential rate" while the cash value of the policy declined to zero dollars. (*Id.*) The Sullivans further alleged Defendant did not advise them on how to prevent either event from occurring. (*Id.* ¶¶ 42, 49.)

On May 8, 2026, Defendant filed the Sullivan Motion, asking this Court to exercise its continuing jurisdiction under the Settlement Agreement and authority conferred by the All Writs Act, 28 U.S.C. § 1651, to enjoin the Sullivans from pursuing the New York Action and enforce the Settlement Agreement. (Mem. of Law in Supp. (ECF No. 271-1) at 6.)

On September 28, 2026, the New York Supreme Court dismissed the New York Action. (ECF No. 304-1.)

### C. The Pargo Dispute

In July 2000, Suzanne B. Heflin and James C. Heflin (the "Heflins") obtained two life insurance policies (the "Pargo Policies") issued by Defendant's subsidiary, C.M. Life Insurance Company. (Gosselin Decl., Ex. 5 (Pargo Compl.) (ECF No. 287-2) ¶¶ 12, 17.) The Heflins are the general partners of Pargo (*id.*), and Pargo owns the policies the Heflins obtained (Taffe Decl., Ex. A (ECF No. 287-2) at 317; Taffe Decl., Ex. B (ECF No. 287-2) at 342).

On May 20, 2026, Pargo filed a complaint in Arizona Superior Court (the "Arizona Action") against Defendant as well as Defendant's subsidiary, the broker who sold the Pargo Policies, and the brokerage firm employing that broker (together, the "Pargo Defendants"). (ECF No. 287-2 ¶¶ 3–6.) Pargo alleged breach of fiduciary duty, breach of the covenant of good faith and fair dealing, negligence, negligent misrepresentation, and unjust enrichment. (*Id.* ¶¶ 72–115.) Specifically, Pargo alleged the Pargo Defendants did not inform it of the possible and realized effects of its incomplete premium payments upon the Pargo Policies, which led to "exponentially higher premiums" and "essentially worthless" policies. (*Id.* ¶¶ 12–71.)

On August 28, 2026, Defendant filed the Pargo Motion, asking this Court to exercise its continuing jurisdiction under the Settlement Agreement and authority conferred by the All Writs Act, 28 U.S.C. § 1651, to enjoin Pargo from pursuing the Arizona Action and enforce the Settlement Agreement. (Mem. of Law in Supp. (ECF No. 287-1) at 14.)[1]

## II. LEGAL STANDARD

The All Writs Act provides district courts with the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of

---

[1] Defendant also filed a motion to dismiss in the Arizona Action on July 1, 2026, which has been fully briefed but not yet decided. (ECF No. 287-1 at 14; ECF No. 297 at 6–7.)

law." 28 U.S.C. § 1651(a). This authority extends to the enforcement of orders concerning federal class action settlements through the Court's injunctive power. *Isley v. BMW of N. Am., LLC*, Civ. A. No. 19-12680, 2026 WL 2566433, at *4 (D.N.J. Aug. 31, 2026) (citing *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, Civ. A. No. 95-4704, 2007 WL 2885814, at *3 (D.N.J. Sept. 27, 2007)).

The Anti-Injunction Act, however, limits the All Writs Act by barring federal courts from enjoining state court proceedings unless "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Third Circuit has held that the "in aid of jurisdiction" exception to the Anti-Injunction Act permits a federal district court to enjoin a state court lawsuit to enforce a final order in a class action. *In re Prudential Ins. Co. of Am. Sales Pracs. Litig. (LaMarra)*, 314 F.3d 99, 104–05 (3d Cir. 2002).

## III. DECISION

### A. The Sullivan Motion

Defendant argues the New York Action is barred by the Release, and therefore, this Court must enjoin the New York Action and enjoin the Sullivans from pursuing the claims asserted in that action to enforce the Settlement Agreement. (ECF No. 271-1.)

The Sullivans do not argue that the New York Action is outside the scope of the Release. However, they argue they are not bound by the Release because they did not receive notice of the settlement.[2] The Sullivans' argument is two-fold. First, they contend Defendant intentionally

[2] The Sullivans present an alternate "theory"—that the increased premiums are "unconscionable." (ECF No. 284 ¶ 5.) The Court does not address this claim because the merits of the New York Action are not before the Court.

failed to send notice to the address required by the settlement agreement.[3] (ECF No. 284 ¶ 12; ECF No. 284-1 at 1.) Second, they contend publication of the settlement in the *New York Times* was insufficient notice because it should have also been published in the *New York Post* to reach conservative class members. (ECF No. 284 ¶ 12.) Defendant asserts it sent notice to the correct address[4] and it published notice not only in the *New York Times*, but also the *Wall Street Journal* and *USA Today* as well as the newspapers with the largest circulation in each of the 50 states. (ECF No. 271-1 at 14; Decl. of Amy Lake (ECF No. 271-9) ¶ 5.)

"When a class action settlement is approved under Fed. R. Civ. P. 23(e) and the requirements of due process are found to have been satisfied, res judicata attaches and all individual class members who have not opted-out are bound by the terms of the class action settlement." *Isley*, 2026 WL 2566433, at *4. Here, the Court approved the Settlement Agreement and determined that the means of notice were "reasonable, due, adequate and sufficient notice to all persons and entities entitled to be provided with notice" and "met all applicable requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States

---

[3] The Settlement Agreement required Defendant to send individual notice "by first class mail, postage prepaid, to each reasonably identifiable Class Member's last known address." (ECF No. 20-9 at 4.) This required Defendant to mail notice to Mrs. Sullivan's last known address, because at the time of notice she was the owner of the policy. (ECF No. 271-3 ¶ 29, 38). The Sullivans contend the notice was instead sent to Mr. Sullivan's business address. (ECF No. 284 ¶ 12.) To support this claim, the Sullivans point to their application for the Policy which states a different address for Mrs. Sullivan than the address Defendant sent notice to. (*Id.* ¶ 7; ECF No. 284-4 at 2.).

[4] Defendant submitted a declaration from one of its operations directors confirming the address of record at the time settlement notices were sent (ECF No. 271-4 ¶ 7), a declaration from the VP of the notice process confirming that notice was sent to that address (ECF No. 271-9 ¶¶ 2–4), and the system record for the Sullivan Policy confirming the address (ECF No. 271-10). Later, Defendant also produced to the Sullivans a printout memorializing that the address of record for the Sullivan Policy was changed in July 2003 to the address that Defendant sent notice of the Settlement Agreement to. (ECF No. 284 ¶ 7; ECF No. 284-5 at 2.)

Constitution and any other applicable law, as well as complying with the Federal Judicial Center's illustrative class action notices."[5] (ECF No. 158 at 6–7.)

Because the Sullivans do not, and cannot,[6] dispute that the New York Action is encompassed by the Release, the issue before this Court is whether their alleged failure to receive notice prevents them from being bound by the Release. Due process does not require actual notice to all class members in federal class action litigation. *Isley*, 2026 WL 2566433, at *9 (citing *Schmidt v. Jaguar Land Rover N. Am., LLC*, Civ. No. 18-8528, 2026 WL 252558, at *3 (D.N.J. Jan. 30, 2026)). Therefore, the fact that the Sullivans allege they did not receive notice does not

---

[5] In fact, "approximately 3 million detailed [c]lass [n]otice [p]ackages were mailed by first-class, postage prepaid U.S. mail, to the last known address of each member of the [c]lass" and notice was published "for two consecutive weeks in *Parade Magazine* and *USA Weekend* . . .[,] twice in *People*, *Time*, and *Newsweek*, and one time in *Fortune*, *Business Week*, [] the *Wall Street Journal*, and the *New York Times*." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 226 (D.N.J. 2005). This publication notice reached about 92.48 percent of the class. *Id.* At the time of approving the settlement, this Court had not received any challenge to the notice methodology. *Id.* at 225. Further, the methodology paralleled the methodology previously approved by the Third Circuit. *Id.* at 226 (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).

[6] The New York Action is within the scope of the Release because the Sullivans are both bound by the Release and the claims they allege fall within those barred by the Release. The Sullivans are bound by the Release because it is expressly binding on both class members and class members' "heirs, . . . successors and assigns." (ECF No. 158 ¶ 12.) Mrs. Sullivan is a class member because she owned the Sullivan Policy as of the class eligibility date, March 31, 2004 (ECF No. 271-9 at 21; ECF No. 20 at 17), the Sullivan Policy was issued in June 2000, which is within the class period of January 1, 1983, through December 31, 2003, and the Sullivan Policy is one of those listed as a qualifying policy in Exhibit B of the Settlement Agreement (ECF No. 271-4 ¶ 6; ECF No. 20-2 at 17). While Mr. Sullivan is not a class member, he became bound by the Release when Mrs. Sullivan transferred ownership of the Sullivan Policy to him. The Sullivans' claims in the New York Action are within the Release because allegations of fraudulent misrepresentation, deceptive conduct, and breach of contract concerning the Policy are suits related to the "marketing, solicitation, . . . sale, purchase, operation, performance, administration, [and] servicing" of the Policy. (ECF No. 158 at 10–14). Each defendant in the New York Action is protected by the Release, because Defendant, the insurance specialist who sold the Sullivans the Sullivan Policy, that specialist's employer, and the company who acquired the employer all fall within the Settlement Agreement's definition of "Releasee."

exempt them from the Release. The Sullivans' allegation that Defendant intentionally sent notice to the wrong address, despite certifications on behalf of Defendant to the contrary, is equally unavailing because "[c]ourts have held that notice . . . to an incorrect address where the defendant had been notified of the correct address [meets] the due process requirement of notice." *Isley*, 2026 WL 2566433, at *9 (quoting *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 238 (D.N.J. 1997)) (internal quotation marks omitted). Accordingly, the Sullivans received notice consistent with due process and as such are bound by the Release. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 2000 WL 708253, at *1 (E.D. Pa. May 18, 2000) ("[A]ctual receipt of notice by each class member is not necessary to satisfy due process where the notice given was, as it was here, reasonable and the best notice practicable.").

Given the Court's retention of jurisdiction under the Settlement Agreement and its finding that the Sullivans are bound by it, the Court must enjoin the Sullivans from pursuing the claims raised in the New York Action to effectuate its order approving the Settlement Agreement. However, Defendant's request for the Court to enjoin the New York Action from proceeding is moot because there is no longer an action for the Court to enjoin. (*See* ECF No. 304-1.)

**B. The Pargo Motion**

The parties agree that Pargo is subject to the Release,[7] but they dispute whether the Settlement and its accompanying Release bar the Arizona Action. To resolve the dispute, the Court must first determine whether Pargo's claims are encompassed by the Release and, if they are,

[7] The Release is expressly binding on class members. (ECF No. 158 at 9.) Pargo is subject to the Release because Pargo is a class member. Pargo is a class member because it owned the Pargo Policies as of the class eligibility date, March 31, 2004 (Taffe Decl., Ex. D (ECF No. 287-2 at 428–29); ECF No. 20 at 17), the Pargo Policies were issued in December 2000 (ECF No. 287-2 at 428–29), which is within the class period of January 1, 1983, through December 31, 2003 (ECF No. 20 at 15), and the Pargo Policies are listed as a qualifying policy in Exhibit B of the Settlement Agreement, (ECF No. 287-2 at 428–29 (listing the plan codes as V94203); ECF No. 20-2 at 19).

determine whether Pargo's claims fall within an exception to the Release. *See Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x 577, 579 (3d Cir. 2011); *Ross v. Metro. Life Ins. Co.*, 411 F. Supp. 2d 571, 576–77 (W.D. Pa. 2006).

**1. Whether Pargo's Claims Are Encompassed by the Release**

The Third Circuit has held that the "key inquiry" for determining whether a class action settlement bars a future claim by a class member is "whether the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement." *Freeman*, 445 F. App'x at 579 (citing *TBK Partners Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)). The Court is guided by the Third Circuit's factual predicate analysis in *Freeman*, which concerned the Settlement Agreement at issue here. To determine whether the factual predicate for the *Freeman* plaintiffs' claims was identical to the factual predicate underlying the Settlement Agreement, the Third Circuit looked to the scope of the Release. *Id.* at 579–80. It determined the Settlement Agreement "d[id] not define the scope of the Release by reference to the claims alleged in the *Varacallo* complaint, but rather, extends to the extensive list of released transactions" enumerated in the Release. *Id.*

Defendant argues Pargo's claims are encompassed by the Release because Pargo raises the same causes of action as those asserted in the *Varacallo* complaint, and both Pargo and the *Varacallo* plaintiffs allege unexpected policy costs, insufficient planned premiums, and misrepresentations or omissions of cost information. (ECF No. 287-1 at 18–19; ECF No. 308 at 7–9, 15–16.)

Pargo's rebuttal posits two arguments. First, Pargo alleges its claims are unlike the claims alleged by the *Varacallo* plaintiffs because they do not concern Defendant's practices in marketing, selling, and administering the Pargo Policies nor misunderstandings of the policies'

costs. (ECF No. 297 at 8, 10–11, 14, 34.) Instead, Pargo's claims concern Defendant's failure to inform Pargo how incomplete premium payments affected the Pargo Policies. (ECF No. 297 at 9, 14, 27.) Second, Pargo argues the common law causes of action the Arizona Action shares with the *Varacallo* complaint are insufficient to amount to an identical factual predicate because the causes of action arise from different facts. (ECF No. 297 at 11–14.)

Following in the steps of the Third Circuit, this Court looks to whether Pargo's claims fall within the Release's enumerated released transactions to determine whether the factual predicates in the Arizona Action and *Varacallo* are identical. The Release covers

> any and all causes of action . . . whether past, present or future . . . that have been, could have been, may be or could be alleged or asserted now or in the future by any Class Member against any or all of the Releasees . . . connected with, arising out of, or in any way related to . . . the transactions.

(ECF No. 20 at 45–46.) The transactions "are defined to include, without limitation and by example . . . any and all acts, communications, omissions, nondisclosures . . . that have been, could have been and/or were allegedly made . . . in connection with . . . the . . . operation, performance, . . . administration, [and] servicing . . . of the Policies." (ECF No. 20 at 46–47.) Pargo's claims principally concern nondisclosures made in connection with the administration of the Pargo Policies, which falls directly within the Release. While, as Pargo argues, Pargo's claims do not arise out of the sale of their Policies the way the *Varacallo* plaintiffs' claims did (ECF No. 297 at 8, 10–11), finding an identical factual predicate does not require the claims to concern the same actions by the Defendants alleged in *Varacallo*. *Freeman*, 445 F. App'x at 579 (3d Cir. 2011) (explaining, in reference to the Settlement Agreement at issue here, "[t]he fact that the plaintiffs in *Varacallo* were challenging different [Defendant] practices with respect to the policies does not mean that the factual predicates are different"). Therefore, Pargo's claims are within the scope of the Release.

### 2. Whether Pargo's Claims Are Encompassed by an Exception to the Release

As the Court found in approving the Settlement Agreement and its Release, "future claims for future conduct are not included in the [R]elease." *Varacallo*, 226 F.R.D. at 244 (D.N.J. 2005). This is because the Release includes an exception: it does not "release a Class Member's right to assert any claims that independently arise from acts, facts, or circumstances arising exclusively after the end of the [c]lass [p]eriod." (ECF No. 20 at 52.) The *Varacallo* class period ended on December 31, 2003. (ECF No. 20 at 15.)

Pargo argues the Arizona Action falls within the exception because it arises from conduct that began after the close of the *Varacallo* class period. (ECF No. 297 at 8, 10.) According to Pargo, the conduct from which the Arizona Action arises is Pargo's incomplete premium payments, which Pargo did not begin making until in or around 2005. (*Id.* at 26.)

Defendant argues Pargo is "plead[ing] around the release" and does not fall within the exception. (ECF No. 308 at 5.) In Defendant's view, the conduct from which the Arizona Action arises is the issuance of the Pargo Policies because the duty Pargo alleges Defendant breached and the premiums Pargo complains about were both created when the Pargo Policies were issued. (*Id.* at 11–12.)

The Third Circuit has held that the exception at issue here does not encompass Releasee conduct beginning during the *Varacallo* class period but may encompass independently arising claims based on Releasee conduct beginning afterwards. *Freeman*, 445 F. App'x at 580 (finding plaintiff's claim did not fall within the Release's exception because the actions Plaintiff complained of began during the *Varacallo* class period); *see also Karatzas v. Mass Mutual Financial Group*, 2016 WL 6953421, at *2 (D.N.J. Nov. 28, 2016) (same). Therefore, the Court must determine when the conduct underlying the Arizona Action started.

The conduct underlying the Arizona Action began, at the earliest, in 2005. Pargo's complaint concerns the Pargo Defendants' failure to disclose material information about the Pargo Policies to Pargo and failure to properly manage those policies. (ECF No. 287-2 ¶ 12.) Specifically, Pargo alleges when it failed to make its complete premium payments from 2005 through 2014, the Pargo Defendants possessed, or should have sought, information about how those incomplete payments impacted the Pargo Policies and had a duty to communicate that information to Pargo. (*Id.* ¶ 38–50, 57, 59–62.) This conduct could not have begun before 2005 because the material information Pargo alleges the Pargo Defendants withheld or failed to investigate did not exist until the incomplete payments began. (See ECF No. 297 at 17–18; ECF No. 287-2 ¶¶ 31–36, 43.)

Because the conduct giving rise to the Arizona Action began after the *Varacallo* class period ended, Pargo's claims fall within the Release's exception. This is consistent with this Court's interpretation of the Release at the time of approving the Settlement Agreement. The Court found the Release only "bar[s] future claims for conduct that occurred in the past that are based on the same factual predicate as th[e] claims in [*Varacallo*]."[8] *Id.* at 244.

Defendant asks the Court to construe Pargo's claims as arising out of the Pargo Policies' issuance, because that is when the Pargo Defendants set the premium payment amounts and began owing a duty to Pargo. (ECF No. 308 at 11–12.) Under that theory, it is of no consequence that Pargo failed to make the required premium payments because the Pargo Defendants' duty to apprise Pargo about the sufficiency of its premium payments existed regardless of those failures. (*Id.*) First, if the Court were to adopt such a construction of Pargo's claims, it would mean the

---

[8] As explained in Section III.B.1, the Arizona Action's factual predicate is the same as *Varacallo*'s factual predicate. However, as the Court's opinion approving the Settlement Agreement makes clear, the action must be based on *both* the same factual predicate as *Varacallo* as well as conduct that occurred prior to the end of the *Varacallo* class period.

Release insulates the Releasees from accountability for any violation of the Releasee's duties to *Varacallo* class members arising from the insurer-insured relationship. Such a consequence is incompatible with the Court's ruling approving the Settlement Agreement. The Court assured objectors to the Settlement Agreement that they were "mistaken" in understanding the Release to cover future claims for future conduct. *Varacallo*, 226 F.R.D. at 244. Second, Defendant may have always had a duty to communicate the potential consequences of a failure to make complete premium payments and administer Pargo's policy, but that is separate from its duty to communicate and investigate the actual consequences of Pargo's actual failure to pay. Those consequences were not known to Defendant, nor was Defendant capable of knowing them, until after Pargo failed to make complete payments.

Defendant also argues the Court's finding means "a plaintiff's conduct could control the application of a class action settlement" because "the only arguable change in behavior . . . relates to changes in Pargo's conduct." (ECF No. 308 at 13.) Defendant's argument incorrectly assumes Pargo's behavior alone led to Pargo's claims. Pargo's claims do not arise from Pargo's conduct, they arise from Defendant's alleged response (or failure to respond) to Pargo's conduct. Defendant's behavior changed because it could not have been withholding information about the effects of Pargo's incomplete payments from Pargo before the close of the *Varacallo* class period because Pargo had not made incomplete payments during the *Varacallo* class period.

Because the Court finds Pargo's claims as alleged are not barred by the Release, it is not necessary for the Court to enjoin the Arizona Action from proceeding to effectuate its order approving the Settlement Agreement.[9]

[9] Nothing in this opinion prevents Defendant from renewing its motion if it later becomes apparent Pargo's claims do not independently arise from acts, facts, and circumstances occurring exclusively after the *Varacallo* class period.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Enforce Settlement Agreement against the Sullivans (ECF No. 271) is **GRANTED IN PART** and **DENIED AS MOOT IN PART** and Defendant's Motion to Enforce Settlement Agreement against Pargo (ECF No. 287) is **DENIED**. An appropriate order follows.

**Date: November 23, 2026**

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**